# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARD YURIEVICH KHUDAINATOV, et al.,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No.: 3:23-cv-01946-W-SBC<br><br>**ORDER DENYING MOTION FOR RETURN OF PROPERTY [Doc. 1] AND DISMISSING CASE** |

On or about October 22, 2023, Petitioners initiated this case by filing a Motion for Return of Seized Property Pursuant to Federal Rule of Criminal Procedure 41(g) ("Rule 41(g)"). ("Motion," [Doc. 1].) On October 30, 2023, the United States ("Respondent") filed its response in opposition to the Motion ("Opposition," [Doc. 8]) requesting the Court deny the Motion and dismiss this Case. Pursuant to the Court's previous order ("Scheduling Order," [Doc. 11]), Petitioners filed their reply ("Reply," [Doc. 12]) to Respondent's Opposition on November 6, 2023.

The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1).  For the reasons stated below, the Court **DENIES** the Motion and **ORDERS** this case **DISMISSED**.

I. **BACKGROUND**

As alleged, in April of 2022, the Fijian authorities seized the luxury superyacht *Amadea* in Fiji at the request of the United States. (*Motion* at 25[1].)  The seizure was executed pursuant to a warrant ("Warrant") issued by U.S. Magistrate Judge G. Michael Harvey of the United States District Court for the District of Columbia.  (*Motion* at 25.)  The application for the Warrant was supported by the affidavit of Federal Bureau of Investigation Special Agent Timothy Bergen—which stated that the *Amadea* was beneficially owned by sanctioned Russian billionaire Suleiman Kerimov and that Mr. Kerimov had committed numerous violations of United States sanctions laws.[2]  (*Motion* at 23-25; *see Opposition* at 3.)  After its seizure, Fijian authorities turned the *Amadea* over to the United States and who thereafter transported it to San Diego, California—where it has remained ever since.  (*Motion* at 25.)

On or about October 22, 2023, Petitioners initiated this case by filing a Motion for Return of Seized Property Pursuant to Federal Rule of Criminal Procedure 41(g).  In the Motion, Petitioners argue that they are the true owners of the *Amadea*, not Mr. Kerimov.  (*Motion* at 11-12.)  And thus, because they are not sanctioned individuals and have not engaged in any unlawful activity, Petitioners argue that the *Amadea* must be returned to them.  (*Motion* at 12.)  On the other hand, the United States asserts that Petitioners are

---

[1] Since Respondent's Opposition does not contain page numbers in its footer, all citations to filings in this order are to the ECF page numbers.

[2] Petitioners have not provided the Court with a copy of the Warrant, the application for the Warrant, or Special Agent Bergen's affidavit.  Accordingly, for purposes of this Order, the Court relies entirely on the Motion's allegations regarding the content of the Warrant and its supporting documents.

merely "straw owner[s]" of the *Amadea* who hold it on behalf of Mr. Kerimov. (*Motion* at 23-24; *see Opposition* at 3.)

According to Respondent, the parties entered into a formal litigation "standstill" after the initial seizure of the *Amadea*, whereby the parties agreed they would not file any actions regarding the *Amadea* until October 23, 2023. (*Opposition* at 3.) Respondent asserts it informed Petitioners on October 20, 2023 that it would be "imminently" filing a civil forfeiture action against the *Amadea*. (*Opposition* at 3.) Accordingly, October 23, 2023 (the day the litigation standstill expired), the United States filed a civil forfeiture action against the *Amadea* in the United States District Court for the Southern District of New York (the "Civil Forfeiture Action").³ However—according to Respondent—Petitioners tried to beat the United States to the punch by filing the present Motion in the Southern District of California at approximately 9:05 p.m. PDT on Sunday, October 22, 2023. (*Opposition* at 3-4.)

Subsequently, Respondent filed its Opposition to the Motion in this case, arguing that: (1) the pending Civil Forfeiture Action divests this Court of jurisdiction; (2) that venue is improper in the Southern District of California; and (3) that the Motion fails the required *Ramsden* factors—thus depriving the Court of equitable jurisdiction. (*Opposition* 4-10.)

## II.   LEGAL STANDARD

When a Federal Rule of Criminal Procedure 41(g) motion is filed outside of an existing criminal case, it is to be treated like a civil complaint seeking equitable relief governed by the Federal Rules of Civil Procedure. *E.g.*, *United States v. Ibrahim*, 522 F.3d 1003, 1007 (9th Cir. 2008) ("Because there were no criminal proceedings pending at the time of filing, the district court properly treated the motion as a civil complaint

---

³ *United States v. M/Y Amadea*, 23-cv-9304 (S.D.N.Y. Oct. 23, 2023).

governed by the Federal Rules of Civil Procedure."); *United States v. Ritchie*, 342 F.3d 903, 906–07 (9th Cir. 2003) ("If a [Rule 41(g)] motion is filed when no criminal proceeding is pending, the motion is treated as a civil complaint seeking equitable relief."). In turn, courts are to treat the government's oppositions to such motions as motions to dismiss under Federal Rule of Civil Procedure 12(b). *Ibrahim*, 522 F.3d at 1008. If a court cannot dismiss the Rule 41(g) motion on the pleadings alone, it is to convert the government's opposition into a motion for summary judgment. *Id*. If the government still cannot prevail in dismissing the case under the summary judgment standard, "the court should go forward with additional proceedings consistent with the Federal Rules of Civil Procedure." *Id*.

Seeing as Respondent's Opposition asserts that this case should be dismissed because: (1) the pending Civil Forfeiture Action divests this Court of jurisdiction; (2) venue is improper in the Southern District of California; and (3) the Court lacks equitable jurisdiction over this case because the Motion fails the required *Ramsden* factors (*Opposition* at 3-4)—the Court treats the Opposition as a motion to dismiss for lack of subject matter jurisdiction and improper venue. In deciding whether it has subject matter jurisdiction over this case and whether venue is proper in the Southern District of California, the Court must accept Petitioners' allegations as true and draw all reasonable inferences in their favor. *United States v. Sperow*, 2018 WL 6174706, at *3 (C.D. Cal. Oct. 18, 2018) (citing *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005)).

However, Federal Rule of Evidence 201 ("Rule 201") permits a court to take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Under this rule, a court may "take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," but it "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988,

999 (9th Cir. 2018).  Under Rule 201, judicial notice of documents filed in other court proceedings is appropriate.  *See NuCal Food, Inc. v. Quality Egg LLC*, 887 F.Supp.2d 977, 984 (E.D. Cal. 2012) ("Courts have consistently held that courts may take judicial notice of documents filed in other court proceedings.").  Accordingly, the Court takes judicial notice of the existence of the Civil Forfeiture Action regarding the *Amadea* currently pending in the United States District Court for the Southern District of New York.

### III. DISCUSSION

#### A. The Pending Civil Forfeiture Action Deprives This Court Of Jurisdiction

Federal Rule of Criminal Procedure 41(g) states that a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."  As noted above, while Rule 41(g) motions are typically filed within existing criminal cases, parties may file a standalone case for the return of seized property under Rule 41(g) when there is no criminal case pending and courts are to treat such motions as civil complaints seeking equitable relief.  *Ibrahim*, 522 F.3d 1003, 1007; *Ritchie*, 342 F.3d at 906-07.  The reason courts allow Rule 41(g) motions to be fashioned into an equitable civil remedy in such circumstances is that when the government seizes property but thereafter declines to bring criminal charges, the owner of the seized property has no other adequate remedy to force the government to return the property. *See United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1234-35 (9th Cir. 1988).

The problem for Petitioners is that Ninth Circuit precedent is clear that once the government initiates a civil forfeiture action regarding the seized property at issue, the owners (or in this case, alleged owners) of the seized property suddenly have an adequate remedy to force the return of the property and court hearing the Rule 41(g) civil case loses jurisdiction.  *U.S. Currency $83,310.78*, 851 F.2d at 1234-35 (holding that there is

no need to exercise equitable jurisdiction over [Rule 41(g) motion] when civil forfeiture proceedings are subsequently initiated because once "a civil forfeiture proceeding is pending, there is no need to fashion an equitable remedy to secure justice for the claimant"); *United States v. Bluitt*, 815 F. Supp. 1314, 1316-17 (N.D. Cal. 1992) ("If [the civil forfeiture proceeding] offers an adequate legal remedy, it is irrelevant that [claimant] first sought the equitable jurisdiction of this Court. As soon as [an] adequate remedy at law becomes available, this Court ceases to have equitable jurisdiction [over the Rule 41(g) motion]."); *In re Chandler*, 270 F.R.D. 576, 578 (S.D. Cal. 2010) (denying Rule 41(g) motions because the "forfeiture proceedings initiated by the government provide [claimants] with an adequate remedy at law" even where "[t]he government initiated the . . . forfeiture proceedings . . . after the instant [Rule 41(g)] motions were filed."); *In re Return of Seized Prop. specifically all funds seized from BoundlessRise, LLC Wells Fargo Bank Acct. No. 'XXXX*, 2017 WL 4180149, at *1 (C.D. Cal. Aug. 30, 2017) ("[I]f a related civil forfeiture proceeding is filed—either before or after the Rule 41(g) motion was brought—the court no longer has jurisdiction to entertain the Rule 41(g) motion."); *In re Seizure of One Blue Nissan Skyline Auto.*, 2009 WL 3488675, at *1 (C.D. Cal. Oct. 21, 2009) ("[A] Rule 41(g) motion is properly denied once a civil forfeiture action has been filed.").

Here, there is indeed a civil forfeiture action pending regarding the *Amadea*—the Civil Forfeiture Action in the Southern District of New York.  In fact, this case is exactly like the Ninth Circuit case *U.S. Currency $83,310.78*, in that petitioners filed their Rule 41(g) Motion just one day before the United States filed the Civil Forfeiture Action.  *U.S. Currency $83,310.78*, 851 F.2d at 1233.  The existence of the Civil Forfeiture Action divests the Court of subject matter jurisdiction over this case because Petitioners now have an adequate remedy to seek the *Amadea's* release: intervening in the Civil Forfeiture Action.  A remedy Petitioners acknowledge they plan to pursue.  (*Reply* at 8 ["Petitioners intend to file a claim in the forfeiture matter in New York . . . ."].)

Petitioners argue that the Civil Forfeiture Action does not actually provide them with an adequate remedy because "that action is likely to be dismissed or transferred . . . ." (*Reply* at 6.)  From there, Petitioners cite several cases purporting to show why they believe the Civil Forfeiture Action will be dismissed—including that venue is supposedly improper in the Southern District of New York.  (*Reply* at 6-8.)  The Court will not entertain these arguments.  The issues Petitioners raise in their Reply are for the court in the Civil Forfeiture Action alone to decide and Ninth Circuit authority is clear that a civil forfeiture action divests other courts of jurisdiction to hear Rule 41(g) motions regarding the property at issue in the forfeiture action.

Accordingly, the Court finds that the Civil Forfeiture Action divests this Court of jurisdiction to hear the Motion.

**B.     The Court Lacks Equitable Jurisdiction Over This Case Because Petitioners Fail To Meet The *Ramsden* Factors**

Additionally, the Court has no jurisdiction over this case because, as alleged, Petitioners fail to meet the *Ramsden* Factors—which both Petitioners and Respondent agree must be met for jurisdiction to exist.  (*Motion* at 13; *Opposition* at 6-7; *Reply* at 9-10.)

Under *Ramsden v. United States*, courts should consider four factors when deciding whether to exercise equitable jurisdiction over Rule 41(g) civil cases: "1) whether the Government displayed a callous disregard for the constitutional rights of the movant; 2) whether the movant has an individual interest in and need for the property he wants returned; 3) whether the movant would be irreparably injured by denying return of the property; and 4) whether the movant has an adequate remedy at law for the redress of his grievance." 2 F.3d 322, 325 (9th Cir. 1993).  Typically, court's require petitioners to satisfy *at least* three of the four *Ramsden* factors before exercising equitable jurisdiction over Rule 41(g) civil cases.  *See In re Prop. Seized from 1015 E. Cliff Drive, Santa Cruz*

1  *CA 95062 on May 14, 2008*, 2013 WL 5568300, at *3 (N.D. Cal. Oct. 9, 2013) (citing
2  *Ramsden*, 2 F.3d at 326.)

### i.  As Alleged, The Government Has Not Displayed A Callous Disregard For Petitioners' Constitutional Rights

Petitioners assert that they meet the first *Ramsden* factor, because they allege that the government callously disregarded their constitutional rights by obtaining the Warrant via a "false and misleading" affidavit. (*Motion* at 29; *Reply* at 10.)

Without delving into the validity of Special Agent Bergen's affidavit in support of the Warrant, the Court notes that Petitioners' arguments about relevance of Special Agent Bergen's affidavit to this factor appear misplaced. *See Matter of Search Warrant Executed*, 2020 WL 5921796, at *3 (C.D. Cal. June 2, 2020) ("As to the first *Ramsden* factor, Flaherty offers no argument that the government seizure in and of itself constituted a callous disregard for his constitutional rights. Indeed, the search and seizure was conducted pursuant to a duly authorized federal search warrant issued upon a showing of probable cause."); *Matter of Search of Specialty Fulfillment Ctr.*, 2018 WL 785861, at *5 (D. Idaho Feb. 8, 2018) (citations omitted) ("The Government followed proper procedure, obtained a warrant, and executed the warrant approved by the Magistrate Judge. In contrast, the court in *Ramsden* found against the government because no warrant was obtained. Clearly, the conduct of the Government here does not rise to the level of callous disregard for Nordic's Fourth Amendment rights.").

Here, the United States does not appear to have displayed a "callous disregard" for Petitioners' rights because, like in *Matter of Search Warrant Executed* and *Matter of Search of Specialty Fulfillment Ctr.*, Petitioners allege the Warrant to seize the *Amadea* was duly issued by U.S. Magistrate Judge G. Michael Harvey of the United States District Court for the District of Columbia upon his finding of probable cause. (*Motion* at 25.) Petitioners attempt to distinguish *Matter of Search Warrant Executed* and *Matter of Search of Specialty Fulfillment Ctr.* by noting that neither case involved accusations that

the government obtained the warrants pursuant to a "false" affidavit.  (*Reply* at 10.)  While this may be true, Petitioner's cite no Ninth Circuit authority supporting the importance of this distinction.  (*See Motion* at 31-32; *Reply* at 10.)  Accordingly, the first *Ramsden* factor does not weigh in favor of the Court exercising equitable jurisdiction over this case.

        ii.    **Petitioner's Do Allege That They Have An Individual Interest In And Need For The *Amadea***

Next, Petitioners argue that they meet the second *Ramsden* factor (that they have an induvial interest in and need for the property at issue) because they are the true owners of the *Amadea*. (*Motion* at 41-42; *Reply* at 10.)  While Respondent obviously contests whether Petitioners are the true owners of the *Amadea* (*Opposition* at 8-9), at this stage the Court must accept Petitioners' allegations as true.  Without weighing in on the merits of Petitioners' allegations, the Court simply notes that they do allege an induvial interest in and need for the *Amadea*.  (*Motion* at 41-42 ["Mr. Khudainatov's interest in the property is clear: he is and always has been the [ultimate beneficial owner] of the Amadea, which is owned by his company Millemarin."].)

        iii.    **Petitioners Have Not Alleged Irreparable Injury**

Petitioners further argue that they meet the third *Ramsden* factor (that they will suffer an irreparable injury if the *Amadea* is not returned to them) because they allege that the *Amadea* "has likely not been properly maintained at the levels an owner would maintain it, while it has been in U.S. custody." (*Motion* at 43.)  While the Court at this stage must accept Petitioners' allegations as true and draw all reasonable inferences in their favor, the Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Here, Petitioners' conclusory allegations that the United States has "likely" not maintained the *Amadea* properly are insufficient to

meet the third *Ramsden* factor. As such, the third *Ramsden* factor does not weigh in favor of the Court exercising equitable jurisdiction in this case.

### iv. The Civil Forfeiture Action Is An Adequate Remedy At Law

Finally, Petitioners argue that they meet the fourth *Ramsden* factor (that there is no adequate remedy at law) because "[since] there has been no civil forfeiture proceeding or criminal indictment filed . . . Petitioners have no legal means for seeking the return of the Amadea other than through this motion." (*Motion* at 43.) Of course, the Civil Forfeiture Action now exists, thus (by Petitioners' own reasoning) providing Petitioners with an adequate remedy at law.

Realizing this, Petitioners assert in their Reply that the Civil Forfeiture Action does not provide them with an adequate remedy at law because it will be dismissed or transferred. (*Reply* at 9-10.) As outlined above, the Court will not entertain these arguments given that they are for the court in the Civil Forfeiture Action to decide. Accordingly, the Court finds once again that Petitioners have an adequate remedy at law: the Civil Forfeiture Action.

Thus, the Court lacks jurisdiction to hear this case because Petitioners have failed to satisfy the necessary *Ramsden* factors.

## C. The Court Will Not Exercise Its "Inherent Power" To Stay The Proceeding

As an alternative to their arguments regarding whether the Court has jurisdiction to hear this case, Petitioners ask the Court to stay this case while it brings a "motion to dismiss and/or transfer" in the Civil Forfeiture Action. (*Reply* at 11.) The idea being that if Petitioners are successful in dismissing the Civil Forfeiture Action, they will once again lack an adequate remedy to seek the *Amadea's* release. (*Id*.)

Indeed, district courts have "an inherent power to stay proceedings in order 'to control the disposition of the causes on its docket with economy of time and effort for

itself, for counsel, and for litigants'" and "[a] stay may be granted pending the outcome of other legal proceedings related to the case in the interests of judicial economy." *In re Morning Song Bird Food Litig.*, 320 F.R.D. 540, 545 (S.D. Cal. 2017) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936)) (citing *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)). When deciding whether to grant a requested stay, the Court must "weigh competing interests and maintain an even balance." *Id*. (quoting *Landis*, 299 U.S. at 254-55). Some of these "competing interests" include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id*. (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

Here, the Court will not exercise its "inherent power" to stay the proceeding because the relevant competing interests weigh against issuing a stay. While Petitioners are correct that there does not appear to be a risk of damage to Respondent from the issuance of a stay, the remaining relevant interests are either neutral or strongly disfavor a stay. To wit, Petitioners argue that Respondent would not suffer any hardship or inequity from a stay because the United States "obviously has nationwide resources." (*Reply* at 7.) However, by this same logic Petitioners—who claim to own "over $1 billion in megayachts alone" (*Motion* at 14)—would also suffer little hardship or inequity by a stay not being entered. As such, this interest is neutral at best regarding whether to issue a stay. Most importantly, the "orderly course of justice" interest weighs heavily against a stay, and it is telling that Petitioners fail raise any arguments about how the "orderly course of justice" would be served by issuing a stay. (*See Reply* at 11.) Indeed, the Court is concerned about Petitioners' apparent gamesmanship in rushing to file this case mere hours before the United States could file the Civil Forfeiture Action and before the parties' formal litigation standstill expired. (*See Opposition* at 3-4.) For the sake of judicial economy, the litigation regarding the fate of the *Amadea* should be consolidated

before one court. Entering a stay here instead of simply dismissing this case in favor of the Civil Forfeiture Action would serve only to complicate the *Amadea's* fate, burden judicial economy, and assist Petitioners in their apparent gamesmanship.

Additionally, even if the Civil Forfeiture Action were to be dismissed (thereby leaving Petitioners with no adequate regarding the *Amadea*), they would still only satisfy two of the four *Ramsden* factors and, as explained below, venue would still be improper in the Southern District of California.

Accordingly, the Court does not find it appropriate to stay this case.

### D. Venue Is Improper In The Southern District Of California

Rule 41(g) states that a motion to return seized property "must be filed in the district where the property was seized." Here, the property was not seized in the Southern District of California, so venue is plainly improper. (*See Motion* at 18-19.) However, since the property was seized in Fiji, venue would not appear to be proper in any district. (*See id.*) While it would seem absurd for venue to be improper in any district[4], the Court need not reach such issue given that civil forfeiture actions may be brought in a district where "any of the acts or omissions giving rise to the forfeiture occurred" and the United States has alleged in the Civil Forfeiture Action that "prohibited payments for the *Amadea's* upkeep transmitted through" the Southern District of New York. (*See Opposition* at 10 n.6.) And even if that Civil Forfeiture Action was not pending, the United States District Courts for the District of Columbia (where the Warrant was issued) and the Southern District of New York (where the United States alleges the acts or omissions giving rise to the forfeiture occurred) have far more substantial connections to the *Amadea's* seizure than the Southern District of California

---

[4] Neither Petitioners nor Respondent have provided the Court with any direct authority regarding where venue is proper (if anywhere) for a Rule 41(g) civil case when then property at issue was seized outside of the United States.

(where the *Amadea* was merely brought after its seizure). See 18 U.S.C § 981(b)(3) ("Any motion for the return of property seized under this section shall be *filed in the district court in which the seizure warrant was issued* or in the district court for the district in which the property was seized.") (emphasis added).

Accordingly, the Court also finds that the United States District Court for the Southern District of California is not the proper venue for the Motion.

IV. **CONCLUSION & ORDER**

For the foregoing reasons, the Court **DENIES** the Motion [Doc. 1] and **ORDERS** this case **DISMISSED**.

**IT IS SO ORDERED**.

Dated: November 13, 2023

Hon. Thomas J. Whelan
United States District Judge